IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Lamont Raphael Briggs, | ) | C/A No.: 1:14-4448-RMG-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden, Perry Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Lamont Raphael Briggs ("Petitioner") is an inmate at the Perry Correctional Institution of the South Carolina Department of Corrections who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's return and motion for summary judgment. [ECF Nos. 14, 15]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion by April 20, 2015. [ECF No. 16]. After obtaining an extension [ECF Nos. 18, 19], Petitioner filed a response on May 11, 2015. [ECF No. 21]. The matter having been fully briefed, it is ripe for disposition.

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted.

I.    Factual and Procedural Background

According to Petitioner's trial testimony, he and Victim were at a trailer on September 5, 2005, both selling crack cocaine when a customer chose to purchase from Petitioner, rather than Victim. [ECF No. 14-1 at 126–28]. Victim became angry, pinned Petitioner against the trailer, and took his crack from him. *Id.* at 128. Petitioner left, went shopping, and returned to the trailer later that evening. *Id.* at 129, 131–32. After a brief interaction with Victim, Petitioner retrieved a shotgun from his car trunk, fatally shot Victim, and left. *Id.* at 53–54, 56–57, 136–60.

Petitioner was indicted by the Clarendon County Grand Jury during the March 2006 term of court for murder and possession of a firearm during the commission of a violent crime ("gun charge") (2006-GS-14-76). *Id.* at 327–28. Attorney Harry Leslie Devoe, Jr., represented Petitioner at a jury trial on March 21, 2006, before the Honorable John M. Milling, Circuit Court Judge. *Id.* at 3 *et seq*. The jury found Petitioner guilty as charged, *id.* at 239, and Judge Milling sentenced Petitioner to concurrent terms of 37 years for murder and 5 years for the gun charge, *id.* at 248.

Petitioner appealed his convictions to the South Carolina Court of Appeals ("Court of Appeals"), and, on appeal, Petitioner was represented by Joseph L. Savitz III, Chief Appellate Defender of the South Carolina Commission on Indigent Defense, Division of Appellate Defense. [ECF No. 14-4].  Attorney Savitz filed a merits brief raising the following issue, "The trial judge committed reversible error by charging the jury that

2

Briggs may have had a duty to retreat before acting in self-defense, where the evidence was uncontroverted that Briggs was a guest on the property where the incident occurred." *Id.* at 4. On September 8, 2008, the Court of Appeals filed an unpublished decision affirming the convictions. [ECF No. 14-6]. The remittitur was issued on September 24, 2008. [ECF No 14-7].

On or about January 12, 2009, Petitioner filed an application for post-conviction relief ("PCR"), raising claims of ineffective assistance of counsel and prosecutorial misconduct. [ECF No. 14-1 at 250–90]. On October 27, 2010, a PCR evidentiary hearing was held before the Honorable W. Jeffrey Young, Circuit Court Judge, at which Petitioner and his counsel, Charles T. Brooks III, appeared. *Id.* at 297–317. On December 18, 2012, Judge Young filed an order of dismissal. *Id.* at 318–26.

Petitioner timely filed a notice of appeal, [ECF No. 14-8], and was represented by Appellate Defender Wanda H. Carter of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, [ECF No. 14-9]. Attorney Carter filed a petition for a writ of certiorari in the South Carolina Supreme Court on July 8, 2013, raising the following issue: "Trial counsel erred in failing to request a jury charge on the law of involuntary manslaughter in the case because petitioner's trial testimony that 'the gun went off' supported such a charge." *Id.* at 3. On November 22, 2013, the State filed a motion to remand and request to hold in abeyance, [ECF No. 14-2 at 22–24], which the South Carolina Supreme Court granted on January 6, 2014. *Id.* at 21. On January 30,

3

2014, the State filed a Rule 60(b), SCRCP, motion requesting that the PCR court vacate its final order of dismissal and issue an amended order to address Petitioner's allegation of ineffective assistance of counsel for failure to request a jury charge on involuntary manslaughter. *Id.* at 17–19. Judge Young filed an amended order of dismissal on or about February 20, 2014. *Id.* at 3–15.

On October 8, 2014, the South Carolina Supreme Court issued an order denying the petition for writ of certiorari. [ECF No. 14-11]. The remittitur was issued on October 24, 2014. [ECF No. 14-12].

Petitioner filed this petition for writ of habeas corpus on November 3, 2014. [ECF No. 1-3 at 1].[1]

II.     Discussion

A.     Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following claims:

**Ground One:**     Trial Counsel was ineffective for failing to request a jury instruction for involuntary where Petitioner's trial testimony that "the gun went off" was evidence sufficient to support such a charge.

**Ground Two:**     Trial Counsel was ineffective for failing to object to the Solicitor's improper closing summation that violated Petitioner's right to a fair trial; the State also in Opening summation to the jury injected highly

---

[1] The petition was received and docketed by the court on November 18, 2014. [ECF No. 1]. However, because Petitioner is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack*, 487 U.S. 266 (1988). The envelope containing the petition was deposited in the prison mailing system on November 3, 2014. [ECF No. 1-3 at 1].

4

prejudicial Golden Rule violations, that also denied the his right to a fair trial.

**Ground Three:**     Trial Counsel was ineffective for failing to object to the trial court's jury instructions on reasonable doubt that shifted the burden in violation of the Due Process Clause when trial Court told the jury to "search for the truth."

**Ground Four:**     Trial Counsel was ineffective for failing to object to the trial court's malice instructions that shifted the burden of proof in violation of the Due Process Clause.

[ECF Nos. 1 at 5–10;  1-1 at 3–10].

     B.    Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

C.    Habeas Corpus Standard of Review

1.    Generally

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.  Moreover, state court factual determinations are presumed to be correct and the

6

petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

           2.      Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

           a.      Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

    (b)      (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

                (A)    the applicant has exhausted the remedies available in the courts of the State; or

(B)     (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266

(S.C. 2007).[2] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (citing *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (internal quotation marks omitted)). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the

---

[2] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854. As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted," *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the South Carolina Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals.

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings

forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986), *superseded by statute on other grounds*

11

(AEDPA).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the states courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir.

1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

C.    Analysis

1.    Procedurally-Barred Grounds

Respondent argues Petitioner procedurally defaulted on his claims in Grounds Two, Three, and Four. [ECF No. 14 at 13]. The undersigned agrees. In Grounds Two through Four, Petitioner alleges his trial counsel was ineffective for: (2) failing to object to the solicitor's improper opening statement and closing argument, (3) failing to object to the court's jury instruction on reasonable doubt, and (4) failing to object to the court's malice instruction. [ECF No. 1-1 at 3–10]. Because Petitioner did not raise these ineffective assistance of counsel claims in his direct or PCR appeal, Petitioner's Grounds Two, Three, and Four are procedurally barred from federal habeas review. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review).

2.    Cause and Prejudice

Petitioner has not shown sufficient cause and prejudice to excuse the default of Grounds Two, Three, and Four. In all cases in which a state prisoner has defaulted his federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will

result in a fundamental miscarriage of justice. *See* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (holding in order to show prejudice a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Rodriguez*, 906 F.2d at 1159 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"); *Sawyer v. Whitley*, 505 U.S. 333, 348 (1992).

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or the defendant's efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. Petitioner fails to articulate any cause for procedurally defaulting on these grounds. Petitioner had a trial, a direct appeal, a PCR hearing, and a PCR appeal in which to raise these issues. However, he failed to raise them, raise them properly, or preserve the issues for habeas review. Petitioner cannot establish cause and prejudice because he has consistently abandoned opportunities to preserve the issues. To the extent Petitioner argues his PCR appellate counsel was ineffective, this argument is insufficient to constitute cause for procedural default or undue prejudice from an alleged constitutional violation. *Cross v. Stevenson,* No. 11–2874, 2013 WL 1207067 at *3 (D.S.C. Mar. 25, 2013) ("*Martinez,* however, does not hold that the ineffective assistance of counsel in a PCR appeal establishes cause for a procedural default. In fact, the Supreme Court expressly noted that its holding 'does not

14

concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts.") (quoting *Martinez,* 132 S.Ct. at 1320); *Johnson v. Warden of Broad River Corr.,* No. 12–7270, 2013 WL 856731 at *1 (4th Cir. Mar. 8, 2013) (PCR appellate counsel error cannot constitute cause under *Martinez* exception); *Johnson v. Cartledge,* No. 12–1536, 2014WL 1159591 at *10 (D.S.C. Mar. 21, 2014] (same).

Having failed to establish "cause," the court does not reach whether Petitioner was prejudiced. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995) ("We are mindful . . . that in *Engle* [*v. Isaac*, 456 U.S. 107, 134 n.43 (1982) ], after finding that there was no cause for the default, the Supreme Court ended its inquiry, noting that because 'we conclude[d] that these respondents lacked cause for their default, we do not consider whether they also suffered actual prejudice.'"); *see also Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998) (same).

In the alternative, Petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* at 337. The court's review of the record does not support a showing of actual innocence. During Petitioner's trial, the solicitor presented the facts recited in

the Factual Background section above. The record makes an assertion of actual innocence

not credible. The undersigned finds Petitioner has failed to meet his burden of

demonstrating actual innocence, and therefore, a procedural bar applies to his claims in

Grounds Two, Three, and Four.

3.     Merits of Ground One

Petitioner's Ground One addresses trial counsel's failure to request an involuntary

manslaughter jury instruction. Ground One was exhausted, as it was raised at PCR, [ECF

No. 14-1 at 279–81, 303–04, 313, 324–25], and to the South Carolina Supreme Court in

the petition for writ of certiorari, [ECF No. 14-9 at 3].   Although Petitioner appears to

abandon this ground now [ECF No. 21 at 11 ("Petitioner concede that Ground One is a

matter of State Law, and therefore not cognizable in the instant petition"), the

undersigned will address it on the merits below because it is a ground cognizable in

federal habeas.

Specifically, Petitioner claims trial counsel was ineffective for having failed to

request a jury instruction for involuntary manslaughter after Petitioner testified that "the

gun went off." Specifically, Petitioner testified at trial as follows:

> Q:     . . . And you go back and pull the gun out and you stick it in his chest. And
> he's defying you to shoot him, right?
> A:     Nah, I didn't stick it to his chest. Ho walked into the gun.
> Q:     He just walked into it, and you pulled the trigger.
> A:     He walked into the gun and the gun went off.
> Q:     So when he's walking to the gun, you're just standing there with it.
> A:     I just pulled it out. As soon as I pulled it out, he was close to me. He was
> walking up on it. As soon as I whip it out, that's when he—he was still
> close enough, close enough for him to walk on—
> Q:     Okay. Where was—

16

A:     And, you know, and told him to back up. I didn't know it was going to go off.

ECF No. 14-1 at 159:1–15.

Q:     And what did you say to him?
A:     I told him to back up.
Q:     And what did he say to you?
A:     "Fuck that."
Q:     And so you pulled the trigger?
A:     It went off. Yeah, I didn't, you know, l don't know how it happened. It happened so quick.
Q:     So it happened so quick. And then after it happens, you stick the gun in the trunk. Close the lid, and drive away.
A:     Because he was jumping up and acting stupid.
Q:     Did you have your cell phone with you?
A:     Yes, sir.
Q:     Did you call 911?
A:     No, sir.
Q:     Did you do anything to try to get him any help?
A:     No, I was scared, man.
Q:     So you're scared. Then you take off and have some of your people dispose of the gun. Where did they—they threw the gun in the mill pond?
A:     Yes, sir.

*Id.* at 159:24–160:19.

Q:     So he's out there at the stop sign talking to somebody. So you get out. There's a period of time that you're talking to some people and messing around before he comes up. And then when you see him start coming, he's saying, "what's up."
A:     If he would not had the stick, I wouldn't have brought the gun out.
Q:     Okay. But you see him with this stick, so you decide he's got a stick, so you're going to get your gun. So you walk up there and pop the trunk.
A:     To scare him off.
Q:     To scare him off. Then you come back around, reach in the trunk and pull out the gun. And by that time he's on you?
A:     Yes, sir.
Q:     So you stick the gun in his chest and pull the trigger?
A:     No, he walked to the gun. I did not move. I didn't move at all. He walked to the gun.
Q:     So you're saying you're sitting there holding the gun on him—
A:     He walked towards it.

17

> Q:      ─And he walks right into the gun─
> A.      He walked right into it.
> Q:      ─And you pulled the trigger?
> A:      Yes, sir.
> Q:      Okay. Then at that point you throw the gun in the trunk, and jump in the car
>         and take off.
> A:      Yes, sir.

*Id.* at 164:8─165:11.

In its order of dismissal, the PCR court cited to *State v. Burriss*, 513 S.E.2d 104,

109 (S.C. 1999), for the definition of involuntary manslaughter:

> involuntary manslaughter is defined as either (1) the killing of another
> without malice and unintentionally, but while one is engaged in the
> commission of some unlawful act not amounting to a felony and not
> naturally tending to cause death or great bodily harm; or (2) the killing of
> another without malice and unintentionally, but while one is acting lawfully
> with reckless disregard of the safety of others."

ECF No. 14-2 at 12. The PCR court stated that for Petitioner's conduct to have been lawful,

he would have had to be armed in self-defense, which requires Petitioner to have established

the following elements:

> 1) the defendant must be without fault in bringing on the difficulty; 2) the
> defendant must have actually believed he was in imminent danger of losing
> his life or sustaining serious bodily injury, or he actually was in such
> imminent danger; 3) if his defense is based upon his belief of imminent
> danger, a reasonably prudent man of ordinary fitness and courage would
> have entertained the same belief; if the defendant actually was in imminent
> danger, the circumstances were such as would warrant a man of ordinary
> prudence, firmness, and courage to strike the fatal blow to save himself
> from serious bodily harm or losing his own life, and; 4) the defendant had
> no other probable means of avoiding the danger of losing his own life or
> sustaining serious bodily injury than to act as he did in this particular
> instance.

*Id.* at 12, *citing State v. Goodson*, 440 S.E.2d 370, 372 (S.C. 1994).

The PCR court cited to Petitioner's acknowledgement that he could have just as easily have gotten into his car and driven away rather than pop the trunk to retrieve the shotgun. *Id.*, *citing* ECF No. 14-1 at 155:25–162:1. Further, the PCR court noted Petitioner failed to demonstrate that even if he were lawfully armed in self-defense, that he was recklessness in his handling of the weapon. That is, Petitioner's testimony allowed for two possible scenarios if jurors believed that he lawfully drew his weapon in self-defense: (1) Petitioner pulled the trigger purposefully, or (2) the Victim, not Petitioner, caused the weapon to discharge when the Victim ran into the weapon. If Petitioner pulled the trigger intentionally, he was not entitled to a charge on involuntary manslaughter. *Sullivan v. State*, 754 S.E.2d 885 (S.C. Ct. App. 2014). Otherwise, the Victim caused the gun to discharge, not Petitioner's reckless disregard for the safety of others. The PCR court found that "As [Petitioner] was not acting in self-defense and not acting recklessly, Counsel's failure to request a jury charge on involuntary manslaughter was not unreasonable. Even if Counsel had requested such a charge, it would not have been given. Therefore, [Petitioner] has failed to demonstrate that Counsel was ineffective in failing to request such a charge." [ECF No. 14-2 at 13].

After a review of the record, the undersigned finds that Petitioner has not overcome the double deference provided by § 2254(d) and *Strickland*. Petitioner failed to elicit any testimony from counsel concerning why he did not request a charge on involuntary manslaughter, thereby failing to overcome *Strickland*'s "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *See Strickland*, 466 U.S. at 689; *Richter*, 131 S.Ct. at 778. The

court notes that counsel requested and received charges on voluntary manslaughter and self-defense.

The PCR judge's finding that Petitioner was not lawfully armed in self-defense is supported by the record and is not objectively unreasonable under § 2254(d)(2). Because there is no evidence to support a charge of involuntary manslaughter, counsel's failure to request such a charge does not constitute ineffective assistance of counsel, and Petitioner's Ground One should be dismissed.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment [ECF No. 15] be granted and the petition be dismissed with prejudice.

IT IS SO RECOMMENDED.

September 29, 2015                            Shiva V. Hodges
Columbia, South Carolina                     United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).